80

DENT ET AL., APPELLEES, *v.* VAN WINKLE, SUPT.,
OHIO DIVISION OF REAL ESTATE, APPELLANT.

[Cite as Dent *v.* Van Winkle (1987), 30 Ohio St. 3d 80.]

(No. 86-1017—Decided April 29, 1987.)

---

[1] This was prior to July 1, 1983 when R.C. 4735.12 was amended in order to prohibit recovery of punitive damages from the Real Estate Recovery Fund.

*Charles Robinson,* for appellees.

*Anthony J. Celebrezze, Jr.,* attorney general, *Cheryl J. Nester* and *Simon B. Karas,* for appellant.

HOLMES, J.   This appeal presents two issues surrounding the Real Estate Recovery Fund, R.C. 4735.12. The first is whether either Dent or St. John obtained a final judgment against Gary Wolf in his capacity as a real estate broker on the grounds of conduct in violation of R.C. Chapter 4735. The second issue is whether their applications were timely filed, pursuant to R.C. 4735.12(B). We find that neither applicant obtained a final judgment against Gary Wolf as a real estate broker, and that both applicants, even assuming their judgments against Wolf were based on violations of R.C. Chapter 4735, failed to file their applications within the requisite time.

We note, in passing, that the court of appeals failed to comply with App. R. 12(A),[2] particularly with respect to appellant's second and fourth assignments of error concerning the statute of limitations issue. The court of appeals summarily disposed of those assignments of error, saying: "We find them to be without merit and not supported by the record." This court has previously reversed and remanded cases on the basis of such terse treatment of assignments of error. *Smith* v. *Jaggers* (1973), 33 Ohio St. 2d 1, 62 O.O. 2d 168, 292 N.E. 2d 641; *Lumbermen's Alliance* v. *American Excelsior Corp.* (1973), 33 Ohio St. 2d 37, 62 O.O. 2d 373, 294 N.E. 2d 224. However, we need not reverse and remand on the court's failure to comply with App. R. 12(A) in that, upon review of the full record before us and the propositions of law presented here and the assignments of error submitted in the court of appeals, we are not required to "speculate as to what obstacles, legal or otherwise, need be overcome in * * * [this] appeal." *Id.* at 40, 62 O.O. 2d at 374, 294 N.E. 2d at 226.

The Real Estate Recovery Fund, established in R.C. 4735.12, is designed to aid, or at least indemnify to a degree, persons damaged as a result of misconduct by a real estate licensee. *Baltimore Savings & Loan Co.* v. *Frye* (1984), 9 Ohio St. 3d 164, 9 OBR 452, 459 N.E. 2d 543. It does not eliminate the availability of other remedies, but rather provides an alternate source of recovery where injured persons for some reason cannot recover their losses against the errant licensee. See Levine, Realtors' Liability (1979), at 177-184. The broader purpose of the Act is to protect

---

[2] App. R. 12(A) provides, in pertinent part:

"* * * All errors assigned and briefed [in the Court of Appeals] shall be passed upon by the court in writing, stating the reasons for the court's decision * * *."

the public from dishonest licensees. Accordingly, R.C. 4735.12(E) provides an immediate deterrent against the licensee:

"Should the superintendent pay from the real estate recovery special account any amount in settlement of a claim or toward satisfaction of a judgment against a licensed broker or salesman, the license of the broker or salesman shall be automatically suspended upon the effective date of an order by the court as set forth herein authorizing payment from the real estate recovery special account. No such broker or salesman shall be granted reinstatement until he has repaid in full, plus interest at the rate of eight per cent a year, the amount paid from the real estate recovery special account on his account.* * *"

## I

Participation in the fund by one allegedly wronged by a real estate licensee is premised on two factors: entitlement to such a recovery, and timeliness in filing a claim therefor. In this regard, R.C. 4735.12(B)[3] provides, in part:

"When any person, except a bonding company when it is not a principal in a real estate transaction, obtains a final judgment in any court of competent jurisdiction against any broker or salesman licensed under this chapter, on the grounds of an act, omission, representation, transaction, or other conduct that is in violation of this chapter or the rules adopted under it, and which occurred after March 4, 1975, such person may upon exhaustion of all appeals, file a verified application in any court of common pleas for an order directing payment out of the real estate recovery special account of the amount of the judgment which remains unpaid."

This first paragraph of subsection (B) details four criteria which must be met in order to entitle a person to participation in the recovery fund: (1) obtaining a final judgment, (2) against a licensed broker or salesman, (3) on the grounds of a violation of R.C. Chapter 4735, and (4) which occurred after March 4, 1975.

In these cases under review, both applicants obtained a final judgment against a licensed real estate broker. However, Mrs. Dent, as a necessary party to the foreclosure action, merely obtained a judgment which determined the amount and priority of her lien. *Klonne* v. *Bradstreet* (1857), 7 Ohio St. 322. It was based on Wolf's default on a mortgage, which is not, standing alone, a violation of R.C. Chapter 4735. Dent apparently recognized this and petitioned the bankruptcy court to lift the automatic stay of state court proceedings under Section 362, Title 11, U.S. Code, and render a judgment against Wolf for misrepresentation. Her petition did not state a claim for lifting the stay, pursuant to Section 362(d), Title 11,

---

[3] This is the version of R.C. 4735.12 in effect from November 15, 1981 to July 1, 1983. The amendments to that section effective July 1, 1983 and thereafter are not dispositive here, as Dent's and St. John's causes of action accrued before July 1983. See *Moss* v. *Ulmer* (1986), 27 Ohio St. 3d 37, 27 OBR 452, 500 N.E. 2d 1376.

U.S. Code, and the bankruptcy court dismissed the complaint. Accordingly, Dent was not entitled to participate in the recovery fund, as she did not obtain a judgment which would justify suspension of Wolf's real estate license.

Similarly, St. John's judgment was not of the type contemplated by the statute. Her judgment resulted from Wolf's failure to repay the loans she made to him. The trial court in the first case found that St. John made the loans to her long-time friend, and that Wolf "took advantage of * * * [her] gullibility, friendship, and lack of knowledge in real estate matters and ha[d] systematically and fraudulently reduced * * * [her] from a financially secure person to a person with insufficient funds to pay current real estate taxes." In affirming that judgment, the court of appeals stated that Wolf "had a relationship of confidence with * * * [St. John] and that he took advantage of it * * *." *St. John* v. *Wolf, supra,* at 4. The question here is whether Wolf engaged in such dishonest conduct in his capacity as a real estate broker.

These loans were given to finance the construction of homes by Wolf, on property owned by Wolf, which would then be sold to individual homeowners. In *Ruby* v. *Hardin* (1941), 33 Ohio Law Abs. 544, 21 O.O. 525, the plaintiff, Ruby, alleged that Hardin, a licensed real estate broker, had fraudulently appropriated money she had given him to pay a contractor for the construction of a building owned by her. The Court of Appeals for Hamilton County found no connection "between the transactions involving the erection and construction of a building on the premises of the plaintiff and the character of Hardin as a licensed real estate broker. The fact that he was such at the time he committed acts of fraud cannot *of itself* establish liability" on his broker's bond. (Emphasis *sic.*) *Id.* at 546, 21 O.O. at 526. As was the case with Hardin, Wolf would not have been required to be a licensed real estate broker to legitimately do what he here did fraudulently.

R.C. 4735.01(A) defines the term "real estate broker" for purposes of R.C. Chapter 4735. The accepting of loans to finance construction of homes was not contemplated within that definition. Additionally, R.C. 4735.01 includes the following language:

"Neither of the terms 'real estate broker' or 'real estate salesman' includes a person, partnership, association, or corporation, or the regular salaried  employees thereof or limited real estate broker or limited real estate salesman, who performs any of the aforesaid acts, whether or not for, or with the intention, or in expectation, or upon the promise of receiving or collecting a fee, commission, or other valuable consideration:

"(1)  With reference to real estate or any interest therein owned by such person, partnership, association, or corporation, or acquired on his own account in the regular course of, or as an incident to the management of the property and the investment therein; * * *"

In the subject transactions with St. John, Wolf was acting as a builder-

developer of real estate, borrowing money from his long-time friend. He was determined to have engaged in dishonest real estate development practices; however, he was not adjudged to be in violation of R.C. Chapter 4735. In order to recover from the recovery fund, a person must obtain a judgment against a licensed broker or salesman on the grounds of conduct in violation of R.C. Chapter 4735. St. John did not. Our holding is consistent with the decisions of sister jurisdictions having similar real estate recovery fund statutes. *Leishman* v. *Goodlett* (Ky. App. 1980), 608 S.W. 2d 377; *Martin* v. *State Real Estate Comm.* (1976), 26 Ariz. App. 239, 547 P. 2d 510; *Von Thaden* v. *State Real Estate Comm.* (1979), 124 Ariz. [App.] 394, 604 P. 2d 658; *Lemler* v. *Real Estate Comm.* (1976), 38 Colo. App. 489, 558 P. 2d 591; *Cumpsten* v. *Real Estate Comm.* (Colo. App. 1986), 727 P. 2d 380.

## II

Even had Dent and St. John been entitled to participate in the recovery fund, we find that their applications were not timely filed. Following the entitlement provisions, R.C. 4735.12(B) also provides:

"The court shall order the superintendent to make such payments out of the real estate recovery special account when the person seeking the order has shown that:

"(1) He has obtained a judgment, as provided in this division;

"(2) All appeals from the judgment have been exhausted and he has given notice to the superintendent, as required by division (C) of this section;

"(3) He is not a spouse of the judgment debtor, or the personal representative of such spouse;

"(4) He has diligently pursued his remedies against all the judgment debtors, other than the licensee, and all other persons liable to him in the transaction for which he seeks recovery from the real estate recovery fund;

"(5) He is making his application not more than one year after termination of all proceedings, including appeals, in connection with the judgment."

The first four of these requirements, which concern the ripeness of the applicants' claims against the fund, have been placed in issue only to the extent discussed in the first part of this opinion. R.C. 4735.12(B)(5) further requires that aggrieved persons make their application within one year after their cause of action accrues, *i.e.,* "after termination of all proceedings * * * in connection with the judgment." In *Moss* v. *Ulmer* (1986), 27 Ohio St. 3d 37, 39, 27 OBR 452, 454, 500 N.E. 2d 1376, 1378, we held:

"* * * [T]he action to recover from the special account under R.C. 4735.12 is separate from the initial action against the real estate agent and does not accrue until after the first judgment is obtained and efforts at collection of that judgment are unsuccessful."

The superintendent's argument that Dent and St. John had to make application within one year of the date of their final judgments must fail, as the statute also requires the aggrieved person to make a diligent effort to collect on his judgment before turning to the recovery fund. The argument of Dent and St. John that they had one year from the date of the Wolfs' discharge in bankruptcy to file their claims must also fail, for several reasons. On the date that a debtor files his petition in bankruptcy, all collection actions against him are automatically stayed, with certain limited exceptions. Section 362, Title 11, U.S. Code. The stay freezes the rights of creditors, generally until the debtor is discharged from his debts. Section 362(c)(2)(C), Title 11, U.S. Code. Although prior to discharge a creditor may receive a small amount of funds from distribution pursuant to Section 726, Title 11, U.S. Code, and although, as here, a creditor's claim may be excepted from discharge pursuant to Section 523, Title 11, U.S. Code, a judgment debtor's filing under Chapter 7 of the 1978 Bankruptcy Code marks the realistic end of successful collection efforts, for all practical purposes of R.C. 4735.12(B).

An unscrupulous real estate licensee may not use the bankruptcy laws to avoid the legal consequences of his misconduct.[4] The victim of such misconduct should not be required to wait until the termination of the debtor's bankruptcy proceedings before he is permitted to merely file his application against the recovery fund. The action of the victim against the recovery fund is separate and unrelated to the bankruptcy proceeding, and the automatic suspension of a broker's license upon payment from the fund is specifically by statute not subject to the Section 362 automatic stay. Section 362(b)(4), Title 11, U.S. Code. Once payment from the fund is made, the Superintendent of Real Estate becomes subrogated to the victim's rights in the bankruptcy proceeding to the extent of the amounts paid, R.C. 4735.12(G),[5] thus eliminating the possibility of a double recovery by the victim.

Accordingly, we hold that a person who is attempting to collect on a judgment against a real estate licensee when that licensee files for bankruptcy must make his application against the recovery fund within one year of the licensee's filing in bankruptcy. This rule furthers the pur-

---

[4] The last sentence of R.C. 4735.12(E) provides:

"A discharge in bankruptcy does not relieve a person from the suspension and requirements for reinstatement provided for in this section."

[5] R.C. 4735.12(G) provides:

"When, upon the order of the court, the superintendent has paid from the real estate recovery special account any sum to the judgment creditor, the superintendent shall be subrogated to all of the rights of the judgment creditor to the extent of the amount so paid and the judgment creditor shall assign all his right, title, and interest in the judgment to the superintendent to the extent of the amount so paid and any amount and interest so recovered by the superintendent on the judgment shall be deposited in the real estate recovery special account."

pose of the fund in compensating the victims of dishonest real estate licensees where such recovery is not otherwise available, without requiring them to await the running of the full gamut of bankruptcy proceedings.

Here, neither appellee filed her recovery fund application within one year of the Wolfs' January 27, 1982 bankruptcy petition. Thus, even had appellees' applications met the substantive requirements of R.C. 4735.12(B), which we hold they did not, those applications were filed too late, pursuant to R.C. 4735.12(B)(5).

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J, and GEORGE, J., concur.

H. BROWN, J., concurs in the syllabus and judgment only.

WRIGHT, J., concurs in judgment only.

MAHONEY and DOUGLAS, JJ., dissent.

MAHONEY, J., of the Ninth Appellate District, sitting for SWEENEY, J.

GEORGE, J., of the Ninth Appellate District, sitting for LOCHER, J.